```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                SOUTHERN DISTRICT OF GEORGIA
                      AUGUSTA DIVISION
```

DANNY WHITE,                        *
                                    *
     Plaintiff,                     *
                                    *
     v.                             *     CV 120-115
                                    *
SANTANDER CONSUMER USA, INC.        *
and CAR MAX OF AUGUSTA, GA,         *
                                    *
     Defendants.                    *

# O R D E R

Before the Court is Defendants Santander Consumer USA, Inc. ("Santander") and CarMax Auto Superstores, Inc.'s ("CarMax") motion to compel arbitration and motion to dismiss.[1] (Doc. 7.) For the following reasons, the motion is **GRANTED**.

## I. BACKGROUND

### A. Procedural Posture

On August 18, 2020, Plaintiff, proceeding *pro se*, filed a "Complaint for Breach of Contract and Demand for Title/Credit Restoration Due to Illegal Predatory Lending Ponzi scheme by Santander Consumer USA" against Defendants. (Compl., Doc. 1, at 1.) The Complaint alleges "Plaintiff unwillingly entered into a Predatory Loan/Ponzi Scheme Auto Loan" with Santander on July 16,

---

[1] Defendants' motion contends that CarMax Auto Superstores, Inc. was incorrectly designated in the Complaint as "CarMax Augusta, Georgia." (Doc. 7, at 1.)

2017 when purchasing a 2016 Chevrolet Impala. (Id. at 3.) Plaintiff contends that Santander's unethical practices during the loan process "forces [him] to demand the title to [his] car for Breach of Contract." (Id.) Plaintiff references a settlement agreement Santander made with 33 different states for $550 million to be paid to consumers that Santander has allegedly refused to execute. (Id.) He further alleges that on June 15, 2020, he received a call from an agent who stated Plaintiff "did not have to make any more payments" and that he would have "full credit restoration" due to the above mentioned settlement agreement. (Id.) Plaintiff demands a jury trial, requests credit restoration at all three credit bureaus,[2] demands title to his car, asks for a temporary or permanent injunction to be issued against Santander and its agents, and seeks punitive damages. (Id. at 4.)

In response, on October 12, 2020, Defendants filed the present motion requesting the Court compel arbitration and dismiss the Complaint. (Doc. 7.) Defendants' motion provides copies of, and sets forth facts surrounding, the underlying contracts entered into between the Parties that each contain an arbitration provision. Plaintiff first executed a Buyer's Order to purchase the vehicle from CarMax. (Id. at 1; Doc. 7-1, at 11-13.) The Buyer's Order contained an arbitration provision. (Doc. 7-1, at 12.) Plaintiff then executed a Retail Installment Contract (the "Contract") to obtain a loan in order to purchase his vehicle.

---

[2] Plaintiff does not explicitly name the three referenced credit bureaus.

(Id. at 6-9.) The Contract contained an arbitration provision and assigned all of CarMax's rights, powers, and privileges to Santander because Santander provided the funding. (Id. at 8-9.) Plaintiff finally executed three extension agreements that gave him additional time to pay overdue loan payments, and each of these agreements also contained an arbitration provision. (See id. at 15, 19, 23.) Defendants contend the claims in the Complaint fall within the scope of the arbitration provisions and therefore are not properly before the Court. Further, they argue that even if it was disputed which claims are proper for arbitration, that in itself is an issue to be determined by an arbitrator and not the Court. (Doc. 7, at 13, 17.)

Pursuant to Local Rule 7.5, Plaintiff's response to Defendants' motion was due by October 26, 2020, and at that time, no response had been filed. (See Doc. 12.) On November 10, 2020, Defendants filed a notice to inform the Court that on November 9, 2020, they received a response to their motion from Plaintiff via U.S. Mail and attached a copy for the Court. (Doc. 13.) On November 12, 2020, Plaintiff filed his response with the Court, identical to the one Defendants attached to their notice days earlier. (Doc. 15.) Plaintiff's untimely response stated generally that he objects to any arbitration and the motion to dismiss, but it did not dispute any of the factual allegations regarding the binding contracts. (Id.) Plaintiff simply reiterated that he was placed in a ponzi scheme which put him into

3

poverty and that Santander is in contempt of their judgment from the State of Connecticut.[3] (Id.)

Defendants filed a reply in support of their motion to compel on November 17, 2020. (Doc. 16.) In their reply, they assert that Plaintiff's response should be disregarded as untimely filed, and that even if the Court does consider it, it provides no grounds for avoiding arbitration. (Id. at 1.) Defendants point out that Plaintiff did not deny that he has agreed to arbitrate these types of disputes or that the arbitration agreements cover the asserted claims. (Id.) Further, Defendants assert that the stipulation of judgment Plaintiff referenced and attached to his response does not apply because he is a third party to the judgment. (Id. at 6.) On December 21, 2020, Plaintiff filed a remark to the Court stating he "is ready for trial; credit restoration and demand for title." (Doc. 19.)

### B. Arbitration Provisions in Buyer's Order, Contract & Extensions

It is unclear from reading Plaintiff's Complaint under which contract he is bringing his breach of contract claim; however, all the contracts contain an arbitration provision, so the Court will review each of them.

The Buyer's Order provides arbitration can be demanded for:

> any claim, dispute or controversy . . . that in any way arises from or relates to this sale and/or this Contract or the Vehicle and related goods and services that are

---

[3] Plaintiff also attached a copy of the "stipulation of judgment" from the Superior Court of the Judicial District of Hartford, Connecticut, which presumably is the settlement agreement he continuously references. (See id. at 3.)

4

> the subject of the purchase and this Contract or the collection or servicing of this Contract, including but not limited to . . . disputes based on contract, tort, consumer rights, fraud and other intentional torts . . . .

(Doc. 7-1, at 12.)  Further, the provision specifies it is governed by the Federal Arbitration Act (the "FAA").  (Id. at 13.)  The Contract's arbitration provision is identical to the one in the Buyer's Order.  (See id. at 8.)

Finally, the three extension agreements contain identical arbitration provisions that also are governed by the FAA and cover

> any claim, dispute or controversy now or hereafter existing between [Plaintiff] and [Santander], including without limitation, any claims arising out of, in connection with, or relating to the Contract, and any modification, extension, application, or inquiry of credit or forbearance of payment; any trade-in of a vehicle; any products, goods and/or services, including the installation thereof, purchased in connection with the Contract . . . .

(Id. at 16, 20, 24.)  Further, they explicitly exclude "[t]he exercise of extra-judicial or self-help repossession," actions "seeking to enforce a security or any action to effect the sale or transfer of the property being foreclosed," any claims where all parties seek $15,000 or less in the aggregate, and "any [c]laims brought in small claims court." (Id.)

## II.  LEGAL STANDARD

The FAA "embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428

5

F.3d 1359, 1367 (11th Cir. 2005) (internal quotations and citations omitted).  The FAA requires courts to "rigorously enforce agreements to arbitrate." Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)).  The Supreme Court has "made clear that the strong federal preference for arbitration of disputes expressed by Congress in the [FAA] must be enforced when possible." Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir. 2003).  Further, the Supreme Court found "the FAA applies to all arbitration agreements involving interstate commerce, including employment contracts . . . ." Id. at 1258 n.2 (citing Cir. City Stores, Inc. v. Adams, 532 U.S. 105 (2001)).

"[T]he party seeking to compel arbitration has the initial burden of producing the arbitration agreement and establishing the contractual relationship necessary to implicate the FAA and its provisions granting [the court] authority to dismiss or stay [the plaintiff's] cause of action and to compel arbitration." Compere v. Nusret Miami, LLC, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019) (citation and internal quotation marks omitted).  If the party for arbitration meets its burden of production, the burden shifts to the party opposing arbitration to show why the court should not compel arbitration.  Bhim v. Rent-A-Ctr., Inc., 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009).

### III. DISCUSSION

As an initial matter, the Court has subject matter jurisdiction over this dispute through diversity jurisdiction. 28 U.S.C. § 1332.[4] The amount in controversy is more than $75,000 and the parties are completely diverse.[5] The Court analyzes whether (A) the FAA governs the arbitration provisions, (B) the arbitration provisions are enforceable, (C) the arbitration provisions cover the current dispute, and (D) the Court should dismiss this action.

### A. FAA

The FAA applies to agreements "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has construed this language broadly, holding that the "involving commerce" language in Section 2 must be read to extend the FAA's reach to the limits of Congress's Commerce Clause Power. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 268, 277 (1995). Here, the contracts at issue involved the purchase of a car and a connected loan agreement between Plaintiff, a Georgia resident, and two companies located in diverse states, and consequently

---

[4] The FAA "does not confer subject matter jurisdiction nor does it create independent federal question jurisdiction." Sunpoint Sec., Inc. v. Porta, 192 F.R.D. 716, 718 (M.D. Fla. 2000) (citation omitted). Therefore, "[i]ndependent grounds for subject matter jurisdiction must be demonstrated." Id.

[5] Although Plaintiff incorrectly contends Santander and CarMax are incorporated under Georgia law and that the Court has jurisdiction because they are "corporations and not just citizen[s]"(Doc. 1, at 2), representatives from each company have clarified that CarMax is a Virginia corporation with its principal place of business there, and Santander is an Illinois corporation with its principal place of business in Texas. (See Doc. 7-1, at 2, ¶ 4; Doc. 7-2, at 2, ¶ 4.) Defendants do not otherwise challenge jurisdiction being proper in this Court.

7

affected interest commerce. See Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 874-75 (finding the payday loan involved interstate commerce because it was between diverse parties). Therefore, the Court finds the arbitration agreement here is governed by the FAA. But, [a]lthough the validity of an arbitration agreement is generally governed by the FAA, state law generally governs whether an enforceable contract or agreement to arbitrate exists," which will be addressed below. Gates v. TF Final Mile, LLC, No. 1:16-CV-0341, 2020 WL 2026987, at *5 (N.D. Ga. Apr. 27, 2020) (citing Caley, 428 F.3d at 1367-69).

Defendants, as the parties seeking to compel arbitration, have satisfied their initial burden of production by producing copies of all of the arbitration provisions and establishing the contractual relationship necessary to implicate the FAA and the authority of the Court. Based on this, the burden shifts to Plaintiff, as the party opposing arbitration, to show why the Court should not compel arbitration.

Defendants contend "Plaintiff's [r]esponse should be disregarded because it was served 28 days after the filing of Defendants' [m]otion, and was thus untimely filed." (Doc. 16, at 1.) The Court agrees. Although Plaintiff is proceeding *pro se* and *pro se* filings are liberally construed, "liberal construction does not mean liberal deadlines." Kessler v. Fl. Dep't of Revenue, No. 09-10079-CIV, 2009 WL 10669038, at *2 n.3 (S.D. Fla. Dec. 22, 2009) (citing Wayne v. Jarvis, 197 F.3d 1098, 1104 (11th Cir.

1999), *overruled on other grounds by* <u>Manders v. Lee</u>, 338 F.3d 1304 (11th Cir. 2003)). Plaintiff has a duty, just as any other party, to comply with the Local Rules of this Court and respond to motions within the allotted 14-day period, and he failed to do so.[6] See L.R. 7.5, SDGa. Based on this, Defendants' motion to compel arbitration is deemed unopposed.

## B. Enforceability of Arbitration Provisions

"Whether an arbitration agreement exists is settled by state-law principles of contract law." <u>Hefter v. Charlie, Inc.</u>, No. 2:16-cv-1805, 2017 WL 4155101, at *5 (N.D. Ala. Sept. 19, 2017) (quoting <u>Hanover Ins. Co. v. Atlantis Drywall & Framing LLC</u>, 611 F. App'x 585, 588 (11th Cir. 2015)). Here, the arbitration provisions are valid under Georgia law. "Under Georgia law, a binding contract requires 'a definite offer and complete acceptance, for consideration.'" <u>Shubert v. Scope Prods., Inc.</u>, No. 2:10-CV-101, 2011 WL 3204677, at *2 (N.D. Ga. July 27, 2011) (quoting <u>Moreno v. Strickland</u>, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002)). It is undisputed that the contracts at issue here satisfy the required elements to be a valid contract, making the arbitration provisions within them enforceable. Plaintiff signed all of the contracts, representing he "read and agree[s] to all provisions on all pages" (Doc. 7-1, at 8), he "acknowledges reading

---

[6] Despite this failure, the Court notes that Plaintiff's untimely response failed to address any of the assertions in Defendants' motion to compel arbitration regarding the actual arbitration agreement or the enforcement thereof. Therefore, even if the Court were to consider this filing timely, it would not carry its burden of showing the Court why it should not compel arbitration.

9

the entire Contract [], including the Arbitration Provision, . . . [and] agrees to be bound by all of the Contract's terms and conditions" (Id. at 11), and he read and understood the terms and contents of the extension agreement before signing it (Id. at 17). Based on these expressions, Plaintiff and Defendants clearly entered into binding, valid contracts which all contained binding arbitration provisions.

C. **Applicability of Arbitration Agreement**

"The FAA creates a presumption in favor of arbitrability," so any doubts concerning the scope of arbitral issues must be construed in favor of arbitration. Paladino v. Avnet Comput. Techs., Inc., 134 F.3d 1054, 1057 (11th Cir. 1998). The Eleventh Circuit has further held that if parties intend to exclude categories of claims from their arbitration agreement, they must clearly express such intent. Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000). In other words, issues will be deemed arbitrable unless it is clear that the arbitration agreement intentionally omits them. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945 (1995).

Here, the Parties agreed to arbitrate almost every single claim and explicitly enumerated disputes based on contract. The only exclusion was in the extension agreements, and the claims at issue do not fit into any of the excluded categories. The language in the arbitration provisions is unambiguous and Plaintiff provides no argument that these claims fall outside the arbitration

provisions. Therefore, the Court finds that Plaintiff's claims are subject to mandatory arbitration.

**D. Status Pending Arbitration**

Defendants move the Court to not only compel arbitration, but also to dismiss the case. (See Doc. 7, at 17.) Section 3 of the FAA provides that once a district court is "satisfied that the issue[s] involved in [a] suit . . . [are] referable to arbitration," the district court "shall on application of one of the parties stay the trial of the action" until the arbitration is complete. 9 U.S.C. § 3. A stay is not required, then, without a request for one because Section 3's stay requirement is triggered "on application of one of the parties." See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC, 807 F.3d 1258, 1268 (11th Cir. 2015) ("[S]ection 3 qualifies the mandatory nature of any stay it authorizes by requiring a party to apply for the stay.") (alterations and citations omitted); see also McGhee v. Mariner Fin., LLC, No. 1:19-CV-934, 2019 WL 5491825, at *6-7 (N.D. Ga. Aug. 7, 2019) (dismissing case because no party requested a stay). Because no stay is requested, the Court finds dismissal proper.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss and compel arbitration (Doc. 7) is **GRANTED**. **IT IS HEREBY ORDERED** that

11

Plaintiff and Defendants **SHALL ARBITRATE** all claims raised in this dispute and this case is **DISMISSED WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk to **TERMINATE** all motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 15th day of March, 2021.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA